LANDRY, Judge ad hoc.
Plaintiff, Thomas Franklin, has taken this appeal from the judgment of the lower court dismissing his claim against defendant Carlos Cashio, doing business as Perma-stone Construction Company, for benefits under the workmen’s compensation act.
In his petition plaintiff alleges that he is totally and permanently disabled as the result of an accident which occurred on May 27, 19SS, in which he lost his left eye while blasting stumps with dynamite during the course of his employment by defendant.
Plaintiff contends that he is permanently and totally disabled to perform the work of a laborer because of the loss of his eye which makes his usual occupation of swamper more hazardous and dangerous. In the alternative, he contends the injuries received have produced neurosis which renders him totally and permanently disabled, and in either event, he is entitled to compensation for 400 weeks. Conversely, defendants maintain the loss of an eye does not produce permanent disability in a common laborer; that the evidence fails to sustain plaintiff’s allegation he is totally disabled from trauma induced neurosis and that plaintiff is, therefore, entitled to benefits for 100 weeks only (being the number of weekly benefits specified for the loss of an eye). Defendants specially plead payment to plaintiff of compensation at the rate of 100 weeks at $21.13 per week which is acknowledged and admitted by plaintiff.
The evidence shows that plaintiff is an illiterate Negro laborer approximately 59-65 years of age (plaintiff himself having testified he does not know his exact age). The circumstances attending plaintiff’s injury are not in dispute and reveal that plaintiff, whose usual occupation is that of *538 “Swamper” or “Logger” was employed by defendant approximately two weeks prior to the accident to assist defendant in the clearing of land defendant intended to develop into a subdivision. Plaintiff’s principal duties were clearing and burning brush and assisting defendant in the removal of stumps with the aid of dynamite charges. Defendant undertook to instruct plaintiff in the handling and use of dynamite and in the course of setting off a charge, plaintiff was struck in the left eye by a piece of wood dislodged by the blast. At the time of injury, plaintiff had removed himself some ISO feet from the point of explosion; he was struck by an object shown to have weighed approximately one and one-half pounds.
Immediately following the accident, plaintiff was taken to a hospital. He was unconscious upon arrival and remained semi-conscious for approximately two days. He remained in the hospital approximately 16 days. His injured eye was removed on or about June 6, 1955.
Dr. Jerome F. Tanna, a general surgeon, testified he was summoned on the date of the accident and saw plaintiff in the hospital. He found plaintiff to be suffering from multiple facial fractures confined to the left side of his face consisting of fracture of antrum, ethmodial region inferior orbital rim, transverse fracture across the mandible or jawbone and fracture of zyogma or cheekbone, in addition to which he found laceration of plaintiff’s left eye and lip and damage to plaintiff’s teeth. He stated he prescribed fluids, antibiotics and sedatives to relieve plaintiff’s pain. Dr. Tanna saw plaintiff on December 11, 1956, and again on June 10, 1957. His testimony shows that plaintiff complained of headaches which Dr. Tanna believed might be due to a slight brain concussion although he was doubtful that plaintiff had, in fact, sustained a concussion.
Dr. Tanna expressed the opinion that plaintiff has fully recovered from his injuries and that he is not disabled to do the work of a common laborer. He was also of the opinion that plaintiff was physically able to perform the work of a logger. It was the opinion of Dr. Tanna that plaintiff had fully recovered from all effects of the accident itself. He found no evidence of neurosis although he did not conduct a neurological examination of plaintiff and predicated his conclusion in this regard solely upon his observation of plaintiff in the hospital and upon the occasion of plaintiff’s two subsequent visits.
Dr. Rosario Samuel Crifasi, an oral surgeon, testified he saw plaintiff in the hospital the day of the accident and because of plaintiff’s condition advised delay in the performance of any dental work needed. He saw plaintiff at his office on July 15, 1955, and attended plaintiff until September 26, 1955, during which he extracted all of plaintiff’s teeth (14 of which he found damaged by the accident). Dr. Crifasi fitted plaintiff with dentures which plaintiff was wearing at the time of the trial. He stated his charge for such services was $250 which had not been paid. He was of the opinion plaintiff was not disabled from performing the work of a laborer.
Dr. J. R. Godfrey, an eye specialist, testified he visited plaintiff in the hospital on the day of the accident at which time plaintiff was unconscious. He removed plaintiff’s injured left eye on June 6, 1955. His testimony is to the effect plaintiff is able to perform the work of a laborer.
Dr. L. F. Magruder, a psychiatrist, testified on behalf of plaintiff and stated that he did not personally examine plaintiff other than such visual and oral examination as was afforded by plaintiff’s visits to his office on June 6 and June 14, 1957. Dr. Magruder testified that based on his examination of the hospital records and his observation of plaintiff on the occasions mentioned, he concluded plaintiff is suffering from a chronic mental disorder due primarily to head trauma and post concussion syndrome and psychoneurosis induced by trauma to the head. He stated this con- *539 elusion was justified by plaintiff’s subjective complaints to the effect that since the accident plaintiff has experienced constant headaches, feelings of anxiety, insecurity, weakness, nervousness, inability to stand loud or sudden noises such as automobiles backfiring, the sensation of a drawing feeling in his head upon going out in the sun without both a hat and umbrella, failing memory and dizziness upon physical exertion. Dr. Magruder was of the opinion that plaintiff is totally and permanently disabled.
Plaintiff appeared as a witness and testified that he has been engaged in the work of swamper all his life. Prior to the accident, he was able to carry out the duties of such occupation without difficulty. Following the accident, he has been unable to work because any exertion produces headache and pain in the region of the left eye. Physical effort produces temporary blindness and dizziness which renders him unable to do hard work. Upon going out in the sun without both hat and umbrella, he experiences a drawing feeling in his head. On one occasion since the accident he went into the woods and attempted to use a power saw but became frightened and threw the saw away while it was running and fled from the place he was working. He frankly admitted he was afraid to attempt to return to the work of logger and that he had no intention of doing so. He further testified that exertion produces faintness and the sensation that something is rolling around loose in his head on the side on which the injury occurred.
Lodes Jones, plaintiff’s daughter, testified that she has cared for her father in her home since his injury. In effect her testimony corroborates that of plaintiff concerning his complaint of headaches, dizziness and inability to work.
The question of whether the loss of an eye produces total permanent disability within the meaning of that term as used in the workmen’s compensation act is one that must be determined in the light of each particular case.
In the case of a skilled laborer, it has been held by the courts of this state that loss of an eye entitles the employee to compensation for 400 weeks for total permanent disability. McCain v. Fohs Oil Company, La.App., 6 So.2d 197. However, in cases involving unskilled laborers, the rule has been established to the effect that loss of an eye does not per se entitle the employee to compensation as for total and permanent disability. Hagen v. Associated Indemnity Corporation, La.App., 20 So. 2d 629, in which an ordinary carpenter was not held totally and permanently disabled because of the loss of an eye; Matthews v. Louisiana Long Leaf Lumber Co., La.App., 55 So.2d 33, involving a woodsman who lost the sight of an eye; McCray v. Yarbrough, La.App., 20 So.2d 447, a case in which a laborer using a mallet in road construction work lost the sight of an eye as a result of being struck therein by a flying splinter.
More particularly, the question of whether loss of an eye results in total permanent disability to a swamper or logger has been decided adversely to plaintiff’s contention by this court in the recent case of Anderson v. Bayham, La.App., 107 So. 2d 531. The Anderson case is squarely in point, involving that of a logger who lost the sight of his right eye. This same conclusion was reached by our brothers in the Second Circuit in the case of Green v. Coal Operators Casualty Company, La.App., 84 So.2d 843, which involved an employee engaged in cutting pulpwood, an occupation comparable to that of Logger. We find nothing in the record to distinguish the instant case from that of Anderson v. Bayham, supra. The trial court was correct in its conclusion that loss of plaintiff’s left eye did not per se produce total permanent disability under the workmen’s compensation law of this state.
We next consider plaintiff’s contention that he is totally and permanently *540 disabled because of neurosis induced by-trauma. It is well established in our jurisprudence that post traumatic-psychoncu-rosis resulting- from an injury received in the course of a workman’s employment is compensable when such condition results in disability. Stanford v. Long & Wolfe, La.App., 199 So. 608; Porter v. W. Horace Williams Co., La.App., 9 So.2d 60; Gardner v. Travelers Ins. Co., La.App., 12 So. 2d 830; Cobb v. Blair, La.App., 22 So.2d 743; Pratt v. Townsend & Mantiply Const. Co., La.App., 59 So.2d 376; Dupre v. Wyble, La.App., 85 So.2d 119.
It is also settled by the jurisprudence of this state that an employee who predicates a claim for total permanent disability upon neurosis induced by trauma bears the burden of proving by a preponderance that the neurosis exists and that it was caused by an accident occurring during the course of his employment. Mouton v. Gulf States Utilities Co., La.App., 69 So.2d 147.
In the instant case, the evidence regarding plaintiff’s alleged neurosis is conflicting to say the least. The evidence of Doctors Tanna, Crifasi and Godfrey is clearly to the effect that they feel plaintiff is able to resume his former employment although these witnesses concede plaintiff may be suffering with headaches to some extent. Dr. Tanna based his opinion on his daily observation of plaintiff during the 16 days plaintiff was in the hospital and on two subsequent office visits. Dr. Crifasi saw plaintiff on numerous occasions between July and September, 1955, during which period he was treating plaintiff for the injury to his teeth. Dr. Godfrey removed plaintiff’s eye and observed plaintiff while plaintiff was in the hospital.
Conversely, the only medical testimony to the effect that plaintiff is disabled because of neurosis is that of Dr. Magruder who saw plaintiff on only two occasions. In addition to the testimony of Dr. Magruder, the only other evidence to the effect that plaintiff’s nervous condition has produced disability is that of plaintiff and his daughter.
The question of disability resulting from injury is one of fact. In the instant case, the lower court having seen and heard the witnesses resolved this factual issue against plaintiff. From the evidence we find no manifest error in this regard. Accordingly, the finding of the lower court in this respect is entitled to affirmation.
The lower court rendered judgment in favor of Dr. Crifasi for the sum of $250, being the amount charged by Dr. Crifasi for dental work including extraction of plaintiff’s teeth and fitting plaintiff with plates. Dr. Crifasi’s charge for such services appears reasonable and the lower court’s award of said amount is affirmed.
For the reasons herein assigned, the judgment of the trial court dismissing plaintiff’s demand and fixing the fee of Dr. Crifasi in the sum of $250 will be affirmed.
Affirmed.